## BELL & HARVEY *vs.* LENT and others.

Where a *usurious loan* is made and promissory notes are pledged as security for the re-payment of the money, an action upon the notes cannot be maintained by the lender against the borrower.

Nor can an action be maintained by a third person who has received the notes from the *lender* under an agreement to *collect them and apply the proceeds* towards payment of a debt due to him from the lender.

A certificate of a notary, that he sent notice of protest to an endorser, directed to a certain place, *the reputed place of residence* of such endorser, is sufficient presumptive evidence that such place is the *reputed* place of residence of the party.

Whether his certificate that *he had not been able to find the endorsers, after making diligent search and enquiry for them*, is sufficient evidence of such inquiry, when the notice of protest is sent to a wrong place, *quere.*

THIS was an action of *assumpsit*, tried at the New-York circuit in June, 1838, before the Hon. OGDEN EDWARDS, one of the circuit judges.

*The plaintiffs declared on the *money counts*, and annexed to [ *231 ] their declaration the copies of *two promissory notes* as the cause of action : 1. A note dated *at New-York*, May 9, 1836, for $2346,55, made by W. Faulkner and payable to the order of James W. Lent, *five months* after date ; and 2. A note of same date, made at same place, for $2346,56, same maker and payee, due *nine months* after date. Both notes were endorsed by James W. Lent, Eddy & Chubb, and John McIntyre. The action was brought against *Lent, McIntyre* and *Eddy*, (Chubb being deceased.) Eddy and McIntyre separately pleaded the general issue, and

gave notice that they would insist upon a partial failure of consideration. The signatures of the maker and endorsers were proved, and as to the *first note* the plaintiffs read in evidence a protest of a notary, stating that on the 12th *October*, 1836, he presented the note at the residence of the maker to a person there, and demanded payment, who answered that the maker was not in town and had left no funds to pay the note ; whereupon he protested the note. They also read in evidence a certificate of the notary endorsed upon the protest, stating that due notice of the protest was, on the 13th October, 1837, served upon *Lent*, by leaving the same at his residence in New-York, " and that not being able to find the endorsers *Eddy & Chubb* and *McIntyre*, after making diligent search and inquiry for them, I put in the post office in this city, notices directed to them respectively, *New-York.*" The plaintiffs also read a protest of the *second note*, in which the notary stated that on the 11th *February*, 1837, he presented the note to Mr. Brown, the *administrator* of W. Faulkner, *deceased*, the maker of the note, and demanded payment, and that the administrator answered that he could not then pay it ; whereupon he protested the note. Accompanying the protest of this note was a certificate of the notary, stating that notice of protest was *personally* served on *Lent ;* that on the evening of the *eleventh* of February a notice of the protest was put in the post office of the city of New-York, for the endorsers *Eddy & Chubb*, directed to them, *Troy*, their reputed place of residence ; that after making diligent search and inquiry [ *232 ] in the city of New-York for *the endorser, *McIntyre*, and not being able to find him, he put a notice for him in the post office in the city of New-York, directed *New-York*, and another directed to him at *Troy*. A witness for the plaintiffs, on his cross-examination testified, that on the 13th *October*, 1836, *McIntyre* was boarding near the timber basin on the tenth avenue in the city of New-York, but had no place of business in the city ; his residence in *February*, 1837, was at *Fort Edward*, in Washington county, where he had resided many years. The residence of *Eddy* and his place of business in *October*, 1836, and *February*, 1837, was at *Whitehall*, in Washington county, and had been so for three or four years previous to those dates. On a further examination, he stated that *Eddy & Chubb* had a timber establishment at *Troy*, and *Chubb* resided there in *August*, 1836, though he died in that month. .

The witness farther testified, that he was the agent of Eddy & Chubb ; that the notes in question were given in the regular course of business, and for full and valuable consideration ; that in August, 1836, they were sent to him in New-York by *Eddy*, with directions to procure them to be discounted for the benefit of Eddy & Chubb and McIntyre ; that he obtained an advance of $2000 upon them from *Thomas S. Whitaker*, and hypothecated the notes with him. The rate of interest agreed upon at the time of the

loan was three per cent. per month. The notes were left with Whitaker as *security* only; they were not sold to him. The plaintiffs then proved that on the 7th October, 1836, they sold to *Whitaker* a bill of exchange on a house in Liverpool for £1000, at 8¼ per cent., amounting to $4811,11, for cash, and held the notes on account of that bill. The witness who proved these facts, on his cross-examination, stated that Whitaker did not pay for the bill when it was delivered; that he called three or four days after receiving it and said that he could not pay the money, and asked the plaintiffs to collect the notes in question and apply the proceeds towards the payment of the money due for the bill, and the plaintiffs agreed to do so. The notes were at the time in the hands of the plaintiffs, having been placed *there on account of other transactions, which however had been [ *233 ] closed.

The defendants moved for a nonsuit on the grounds: 1. That there was not sufficient evidence of *demand* and *notice;* and 2. That the plaintiffs had not shown such title to the notes as would authorize a recovery by them; that *Whitaker* having taken the notes *as security for an usurious loan*, acquired no title, and could not have recovered in an action upon them against the defendants; and that the plaintiffs, having taken the notes from Whitaker under an agreement to *apply the proceeds when collected* towards the payment of a *pre-existing debt*, had no better title than Whitaker, and could not recover. The judge refused to nonsuit the plaintiffs. The defendants then insisted that the plaintiffs were not entitled to recover on the note which fell due in *October*, 1836, for *want of notice* of non-payment; and that at all events, they were not entitled to recover *more than the amount of money loaned by Whitaker*, to wit, $2000, with the interest thereof from the time of the loan, and requested the judge so to charge the jury. The judge refused so to charge, and the jury under his direction found a verdict for the plaintiffs for the amount of both notes, with the interest thereof, viz. $5180,20. The defendants, on a bill of exceptions, moved for a new trial.

*S. Stevens*, for the defendants.

*S. Sherwood*, for the plaintiffs.

*By the Court*, NELSON, Ch. J. The demand and notice were *prima facie* sufficient to charge the endorsers on the note *last due*. There is no ground for complaint as to the *demand*, and the notary's certificate is full as to notice. Indeed, it was correctly directed to *Troy* for the purpose of charging *Eddy & Chubb*: it was their place of business, and the residence of one of them.

An objection was taken on the argument to the competency of this proof,

as going beyond the facts to which the notary is authorized to cer-
[ *234 ]   tify under the act of 1833.   The *point was not made on the
trial, which would be a sufficient answer.   But on looking at the
statute, we are of opinion he did not exceed his authority.   It makes the
certificate, *specifying the mode of giving such notice, and the reputed place
of residence of the party to whom the same was given, and the post office
nearest thereto, presumptive evidence of the facts.   Statutes of* 1833, *p.* 395,
§ 8.   Here the mode was particularly pointed out, and *prima fucie* sufficient
in the law to charge the endorsers.   There is some difficulty in maintaining
the sufficiency of the notice to Eddy & Chubb and McIntyre on the note
*first due*, especially as an objection was taken to it on the trial.   Strict dili-
gence should be shown to ascertain the residence of the endorsers, where
the notice has been directed to the wrong place.   13 *Johns. R.* 432.

The material question, however, in the case arises upon the plaintiffs' title
to the notes.   There was *no sale* of them to Whitaker, and therefore the
case does not fall within the protection of the principle contained in *Cram* v.
*Hendricks,* 7 *Wendell,* 569.   The money was advanced by way of *loan*,
upon usurious interest ; and the notes transferred simply, as collateral secu-
rity.   It is impossible to uphold this transaction without virtually repealing
the statute.   The collateral paper must abide the fate of the principal debt
to secure which it was given ; that being infected with usury, the whole is
void as against these defendants.   Then as to the title of the plaintiffs.
They sold Whitaker a bill of exchange for cash : failing to make the ad-
vance, he afterwards transferred the notes to them simply for collection, the
monies due thereon to be applied to their demand against him when collect-
ed.   They are therefore the mere *agents* of Whitaker, and of course their
title is no better than his.   As the case stands, I think, the defendants were
entitled to the verdict.

New trial granted, costs to abide the event.