PRENTICE (UNITED STATES v.). See Case No. 16,083.

---

## Case No. 11,383.
PRENTICE et al. v. ZANE.

[11 Law Rep. 204.]

District Court, W. D. Virginia. Sept. 9, 1846.

NOTES — FRAUDULENT CONSIDERATION — BONA FIDE HOLDER FOR VALUE.

1. If the consideration of a note be fraudulent between the original parties, a subsequent holder will be held to strict proof that he paid value for it.

2. The exposition of the statutes of any state, by the courts of that state, is always regarded as of binding authority in the construction of such statutes by courts of other states.

3. The case of Swift v. Tyson, 16 Pet. [41 U. S.] 18, explained.

4. A promissory note or bill of exchange, which is made negotiable by the law of Pennsylvania, and is transferred to the holder as collateral security, merely for an antecedent debt or liability, without notice of fraud, will not confer such a title on the holder as will exclude all equities between the maker and the payee, or any previous holder.

This was an action of debt brought on a promissory note, made by the defendant, payable to the order of James H. Johnson, in the following words: "$5437.50. Philadelphia, Nov. 28, 1836. Five years after date I promise to pay to the order of James H. Johnson, five thousand four hundred and thirty-seven dollars and fifty cents, without defalcation, for value received. Platoff Zane." The suit was brought by the plaintiffs as indorsees of the payee; Johnson and the defendant pleaded nil debet, in which the plaintiffs joined. Upon the trial of the cause, the jury found, by a special verdict, that the note was made in Philadelphia; that the consideration was fraudulent; that it was indorsed in blank, in Kentucky, by the payee and delivered before maturity, to one Stivers, and by him delivered without indorsement to the plaintiffs, before maturity and without notice of the fraudulent consideration; and that there was a statute in Pennsylvania which declared that a promissory note "shall be held by the indorsee, discharged from any claim of defalcation or set-off by the drawers or indorsers thereof; and the indorsee shall be entitled to recover against the drawer and indorser, such

sum as on the face of said note, or by indorsements thereon, shall appear to be due." The other pertinent facts found by the special verdict appear in the decision of the judge. The parties further consented that the court should look to and regard the decisions of the courts of Pennsylvania, as found in the printed reports of that state, to avail as much, as if the same were found by the special verdict, and to have such weight as in the opinion of the court they were entitled to. They further agreed, in the same form, to waiver all objections to the verdict on account of its findings, in part evidence, and not facts, and that the court, in deciding thereon, may make all just inferences and conclusions of fact and law from the evidence and facts therein stated, and the decisions aforesaid, which, in the opinion of the court, a jury ought to draw therefrom, if the same were submitted to them upon the trial of the cause. And, finally, that the above agreement should be made a part of the record in this suit.

Moses C. Good, for plaintiff.
Z. Jacob and Daniel Lamb, for defendants.

BROCKENBROUGH, District Judge. It will be seen, from the condensed statement of the propositions established by this special verdict, that the jury have submitted to the court, as conclusions of fact and law, to be deduced from the deposition and record referred to in the fourth and fifth propositions stated above, the important question whether any, and if any, what valuable consideration was paid: (1) by Stivers to the payee, Johnson, for the indorsement of the note to him, and (2) by the plaintiffs to Stivers for the delivery of the note, without indorsement, to them. Inasmuch, therefore, as the special verdict is incomplete until the conclusions of fact and law are drawn by the court, I will, in the first place, state those conclusions, and will then treat them as a part of the finding of the jury, in discussing the important and interesting legal questions presented by this record.

1. And, first, as to the question of consideration for the transfer of the note by the payee, Johnson, to Stivers, the first holder. The jury have found by their verdict that no evidence was submitted to them that Stivers paid any consideration for the indorsement of the note to him unless the same should be inferred from the matters stated in the verdict; or, in other words, unless the law requires that the payment of value by Stivers should be inferred from the mere fact of the indorsement. Now, while it is a perfectly well-established principle of the law merchant that every indorsement of commercial paper does, prima facie, import that it was made for value, the exception to the principle is equally well settled that this presumption of law ceases when it is shown that the consideration was fraudulent between the original parties, and, in such case, the holder is held to strict proof that he paid value for it. Story, Prom. Notes, § 196; Chit. Bills, 69. The case here comes fully within the operation of the exception. The verdict finds that the consideration was fraudulent between the original parties, and the onus was thus cast upon the plaintiffs to show by positive evidence that Stivers did, in fact, pay valuable consideration for the indorsement to him. The plaintiffs having failed to adduce such proof, I am bound to draw the conclusion that the indorsement of this note by Johnson to Stivers was without consideration. "De non existentibus et non apparentibus eadem est lex."

2. As to the question of consideration paid by the plaintiff to Stivers for the delivery of the note to them, the deposition and record, which are incorporated with the special verdict, establish that no present value was paid by the plaintiffs to Stivers in consideration of the delivery and transfer of the note to them; that the note in question was delivered by Stivers to the plaintiffs, along with other securities to a large amount, as collateral security to indemnify said plaintiffs on account of antecedent debts of Stivers, paid by plaintiffs as his sureties, and antecedent liabilities, for the discharge of which they were also responsible as sureties of Stivers, and that said note was not delivered by Stivers to them in payment of any such debts and liabilities.

The first question which presents itself upon the record for the consideration of the court is,—By what law are the rights of the parties to this controversy to be governed? Are they to be governed by the laws of Pennsylvania, where the contract was made?—by the laws of Kentucky, where the note was indorsed? or, by the laws of Virginia, where the action is tried? Upon this preliminary inquiry I feel no difficulty whatever in determining that the law of Pennsylvania must govern; for it is clear that the rights of the holder are not governed by the law of the place where the indorsement is made, or the law of the forum where the action is brought, but by the law of the country where the bill is drawn, if it is either payable there, or payable generally. Story, Confl. Laws, §§ 317, 332, 333; Story, Bills, §§ 161, 163, 164, 167–169. It is needless to multiply authorities upon this point since it is conceded by the counsel on both sides that the law of Pennsylvania must determine this controversy. If it were not so, indeed, the claim of the plaintiffs to recover could not be entertained a moment here, for the fact that this note was fraudulently, and without consideration, obtained by the payee from the maker, having been found by the verdict, this original taint would, by the laws of Virginia, and I presume of Kentucky also, adhere to it into whatever hands it might pass, the note sued on not being commercial paper by the laws of those

states, but a mere chose in action, subject to all the equities of the antecedent parties. If the plaintiffs can recover here, therefore, it must be in virtue of the negotiable character imparted to this instrument by the Pennsylvania statute, and of their having acquired it for valuable consideration, without notice of the fraud, before its maturity, in the usual course of business.

How, then, are we to determine what is the law of Pennsylvania as applicable to the case at bar, and where are we to look for it? It is contended by the counsel for the plaintiffs, that we must seek for it alone in the statute itself, and that this statute having made such instruments as that sued on negotiable, they become ipso facto subject to the law-merchant, as that law is expounded and enforced by the courts of law throughout the commercial world, and that the decisions of the courts of Pennsylvania in exposition of this statute are only entitled to respect so far as they are in conformity with these universal principles of commercial law. This proposition is controverted by the counsel for the defendant, and they insist that inasmuch as the commercial character of the note, which is the foundation of this suit, is imparted to it exclusively by an express statute of Pennsylvania, the construction and exposition of that state, given by the courts of that state, must be received, in every other forum, as part of the law itself. If this question were now presented for the first time in a court of justice, I could feel no difficulty in recognizing the doctrine contended for by the counsel for the defendant. But it is in truth no longer an open question, and has been repeatedly decided by the supreme court of the United States, as I will now proceed to show.

In the case of Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 159, Marshall, C. J., says: "This court has uniformly professed its disposition, in cases depending upon the laws of a particular state, to adopt the construction which the courts of the state have given to those laws. This course is founded on the principle, supposed to be universally recognized, that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus, no court in the universe, which professed to be governed by principle, would, we presume, undertake to say, that the courts of Great Britain, or of France, or of any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal which should correct such misunderstanding. We receive the construction given by the courts of the nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction than to depart from the words of the statute. On this principle the construction given by this court to the constitution and laws of the United States is received by all as the

true construction; and, on the same principle, the construction given by the courts of the several states to the legislative acts of those states is received as true, unless they come in conflict with the constitution, laws, or treaties of the United States. If then this question has been settled in Kentucky, we must suppose it to be rightly settled."

In the case of Green v. Lessee of Neal, 6 Pet. [31 U. S.] 296, a summary of the decisions of the supreme court on this question is given by McLean, J. He says: "It may be proper to examine in what light the decisions of the state courts, in giving a construction to their own statutes, have been considered by this court. In the case of McKean v. De Lancy's Lessee, reported in 5 Cranch [9 U. S.] 22, this court held that the acknowledgment of a deed before a justice of the supreme court, under a statute which required the acknowledgment to be made before a justice of the peace, having been long practised in Pennsylvania, and sanctioned by her tribunals, must be considered as within the statute." The chief justice, in giving the opinion of the court in the case of Bodley v. Taylor, 5 Cranch [9 U. S.] 221, says, in reference to the jurisdiction of a court of equity: "Had this been a case of the first impression, some contrariety of opinion would, perhaps, have existed on this point. But it has been sufficiently shown, that the practice of resorting to a court of chancery in order to set up an equitable against the legal title, received in its origin the sanction of the court of appeals, while Kentucky remained a part of Virginia, and has been so confirmed by an uninterrupted series of decisions as to be incorporated into their system, and to be taken into view, in the consideration of every title to lands in that country, such a principle cannot now be shaken. In the case of Taylor v. Brown, 5 Cranch [9 U. S.] 255, the court say, in reference to their decision in the case of Bodley v. Taylor: 'This opinion is still thought perfectly correct in itself. Its application to particular cases, and, indeed, its being considered as a rule of decision in Kentucky titles, will depend very much on the decisions of that country. For, in questions respecting titles to real estate, especially, the same rule ought to prevail in both courts.' In [Polk v. Wendal] 9 Cranch [13 U. S.] 87, the court say: 'That in cases depending on the statute of a state, and, more especially, in those respecting titles to lands, the federal courts adopt the construction of the state where that construction is known, and can be ascertained. And in [Mutual Assurance Society v. Watts] 1 Wheat. [14 U. S.] 279, it is stated that the supreme court are uniformly under a desire to conform its decisions to those of the state courts, on their local laws.'" In [Shelby v. Guy] 11 Wheat. [24 U. S.] 361, the court again declare that "the statute laws of the states must furnish the rule of decision to the federal courts, as

far as they comport with the constitution of the United States, in all cases arising within the respective states; and a fixed and re-ceived construction of their respective stat-ute laws, in their own courts, makes a part of said statute law. In a great majority of the causes brought before the federal courts, they are called on to enforce the laws of the states, and it would be a strange perversion of principle if the judicial exposition of those laws by the state tribunals, should be disregarded. These expositions constitute the law, and fix the rule of property. Rights are acquired under this rule, and it regulates all the transactions which come within its scope."

Many other decisions of the supreme court to the same point, might be cited, but those already referred to are quite sufficient to show, that in construing the statute law of a state, the exposition given of it by the courts of the state, is always regarded as of binding authority; or, to use the emphatic language of some of the cases, is always re-garded as part of the law itself. I have been more full in my citations upon this point because it was seriously contended by the counsel for the plaintiffs, that in the case at bar, the exposition given of this par-ticular statute for a long series of years, by the courts of Pennsylvania might safely and properly be rejected by this court; and, especially, because the counsel supposed that he was sustained in this position, by certain expressions quoted from an opinion delivered by the late distinguished Justice Story, in the case of Swift v. Tyson, 16 Pet. [41 U. S.] 18. I do not, however, so read the opinion of Judge Story. In that case, a holder of a bill of exchange, who had receiv-ed it in payment and in extinguishment of an antecedent debt, brought a suit against the acceptor in New York. The considera-tion on which the bill was accepted had fail-ed, but the plaintiff had received it bona fide, and without notice of the fraud before its maturity, and it appeared that some of the New York cases denied that an ante-cedent debt was a sufficient consideration to shut out the equities of the original parties in favor of the holder. And the question discussed by Judge Story on this branch of the case was, whether in such a case as that, resting, not on the construction of a local law of New York, by the courts of the state, but on the general principles of com-mercial law, the decisions referred to, in con-flict as they were, with the later decisions of their own courts, and with the weight of authority elsewhere, were binding upon the supreme court? In discussing this question, the judge says: "But, admitting the doc-trine to be fully settled in New York, it re-mains to be considered whether it is obliga-tory upon this court, if it differs from the principles established in the general com-mercial law. It is observable that the courts of New York do not found their decisions up-

on this point upon any local statute, or positive, fixed, or ancient local usage; but they deduce the doctrine from the general principles of commercial law." And, again, on the same page he says: "The laws of a state are most usually understood to mean the rules and enactments promulgated by the legislative authority thereof, or long es-tablished local customs having the force of laws. In all the various cases which have hitherto come before us for decision, this court have uniformly supposed that the true interpretation of the 34th section" (referring to the judiciary act of 1789 [1 Stat. 92]) "lim-ited its application to state laws strictly lo-cal, that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent lo-cality, such as the rights and titles to real estate, and other matters immovable and in-fraterritorial in their nature and character. It never has been supposed by us that the section did apply, or was designed to apply to questions of a mere general nature, not at all dependent upon local statutes, or lo-cal usages of a fixed and permanent opera-tion." Now these expressions of Judge Sto-ry, so far from sustaining the position con-tended for by the plaintiff's counsel, do un-questionably "exclude the conclusion" that this court can, in construing this Pennsylva-nia statute, reject the exposition given of it by her own courts. They do, by necessary intendment and inevitable implication, de-clare that that exposition is obligatory upon this court. Here we have what was want-ing in the New York case, "a positive stat-ute of a state," to direct us; here we have "the construction of the local tribunals thereof" to guide us, and to reject that guide would not only be unreasonable and presumptuous in itself, would not only be inconsistent with the often promulgated opinions of the supreme court of the United States, but in derogation of the very author-ity cited by the plaintiff's counsel, to justify us in shutting our eyes to the steady lights which glow on so many pages of the Penn-sylvania Reports.

Having thus established, as I think, that in construing the act of Pennsylvania, I am bound to adopt the exposition given of it by her own courts, I will now briefly review some of the leading cases decided in the Penn-sylvania courts on this subject, and in doing so, I shall limit myself to an examination of such cases as involve the precise ques-tion presented by this record, viz., whether a promissory note, or bill which is made ne-gotiable by the law of that state, and is transferred to the holder as collateral se-curity merely, for an antecedent debt or liability, without notice of fraud, confers such a title on the holder as will exclude all equities between the maker and payee or any previous holder? The case of Petrie v. Clark, 11 Serg. & R. 377, was this. A prom-

issory note was indorsed in blank to executors for goods purchased of them, which were part of the assets in their hands. One of the executors, without the knowledge of the other, being indebted to the plaintiff on his own promissory note of nearly the same amount, after his own note became due, made an arrangement with the plaintiff, by which his own note was taken up by a new note, and the note which had been received by the executor for the goods of his testator, was handed over with the blank indorsement of the payee as a collateral security for the payment of this debt. The plaintiff was entirely ignorant of the circumstances under which the latter note came into the hands of the executor. As the case presents nearly the identical question involved here, and as the opinion covers the whole ground, I shall present the view of Judge Gibson in his own language. He says: "In regard to a pledge there is a decisive difference between the pawning of a security for an antecedent debt, and the pawning of it for money advanced at the time. As to the first, all the cases agree that the interest of the pawnee is defeasible by creditors, or legatees; and as to the second, the validity of the contract depends on all those considerations, that would affect an absolute sale under like circumstances; that is, where it appears the pawnee knew that the money was obtained for purposes foreign to the executor's duty, the transaction is to be regarded as collusive. Then to come to the facts of the case before us: The note, on which suit is brought, was indorsed to the executors in blank, for goods purchased of them, which were part of the assets, and the note itself was, consequently, assets in their hands. The executor who had this note in possession, was indebted to the plaintiff on his own promissory note, to nearly the same amount, and after his note became due, made an arrangement with the plaintiff by which it was taken up, and a new note at five months substituted in its stead, and as the note on which the suit is brought was handed over with the blank indorsement of the payee as collateral security for the payment of this debt, the other executor being no party to the transaction, and the plaintiff being entirely ignorant of the circumstances under which the note in question came to the hands of the executor. On this naked statement of facts it will be seen that collusion is altogether out of the case, and that the question is, whether the plaintiff is to be considered a holder for value. If the note had been delivered to him in discharge of the debt, there would be no difficulty in saying, in the absence of collusion, that taking it in the usual course of business as an equivalent for a debt that is given up, would be a purchase of it for valuable consideration. But as it appears in the bill of exceptions, that it was given in pledge for securing an antecedent debt, which was not discharged but suffered to remain, and as it does not appear that money was advanced, or any act done, that would in law be a present consideration, the case presented was against the plaintiff. The evidence therefore, prima facie, made out a defence; although it might, I apprehend, have still been shown on the other side, that the plaintiff had a right to recover, provided he had been able to prove that time was given in consideration of obtaining the note in question, as security for the debt, and that in consequence, the debt was lost. The giving of time would be a present, and a valuable consideration, and a pledge in these terms would be the same as a pledge for money paid down. There is nothing in the commercial nature of the security to vary the nature of the transaction. Where the holder of a note or bill has not paid value for it, he is in privity with the first holder. Collins v. Martin, 1 Bos. & P. 651. There is a difference, too, between a note regularly negotiated, which always supposes a consideration, and a note placed like the present, in the hands of a creditor merely as a security, which, in this respect, stands exactly as it would if it were a bona. that is, as a mere pledge subject in the hands of the holder to every equity that could be set up against it in the hands of the person from whom he obtained it. Roberts v. Eden, Id. 398. In this respect, equity and the commercial law perfectly agree, both being founded in principles of reason as well as convenience. The question then is, whether the plaintiff is a holder for value; and as the case stands on the bill of exceptions, the evidence went directly to prove that he was not." This doctrine is fully recognized in the case of Walker v. Geisse, 4 Whart. 258. In Depeau v. Waddington, 6 Whart. 233, the doctrine is again affirmed, and the leading case of Petrie v. Clark is cited and approved. In delivering the opinion of the court, Judge Rogers says: "It has been repeatedly held, that a collateral security for a pre-existing debt, without more, is not such a consideration as will give title to the holder; yet if there is a new and distinct consideration, the holder is a purchaser for value, and as such protected from a defence which would have been available between the original parties. It seems to me, there would be no great difficulty in proving that it would have been better not to have restrained the negotiability of paper bona fide pledged as a collateral security for a debt; but on this point the law is settled. Without making a parade of learning and research by the citation of numerous authorities, foreign and domestic, ancient and modern, it is sufficient to refer to Petrie v. Clark, 11 Serg. & R. 377, where both points are ruled." The same point is said to be again affirmed in Jackson v. Polack, 2 Miles, 362, decided in 1840, but the book is not in the state library at Lewisburg, and I have not had access to it elsewhere.

From the review of the Pennsylvania cases, it is clear that the law, as there settled, entitles the defendant here to the benefit of his original equities against the payee; and since the fraudulent procurement of this note by the payee is a fact found by the special verdict, I must render judgment thereon for the defendant. I should not hesitate to do so in this case, even if it were true, as contended by the plaintiffs' counsel, that the case of Swift v. Tyson [supra] was in direct opposition to the proposition established by the series of Pennsylvania cases, for I insist that if the point had been ruled differently by the supreme court, in reference to a New York contract, that court would yet be constrained, by the principles admitted by Judge Story, cited elsewhere in this opinion, to conform their decision, in a case arising under a local statute of Pennsylvania, to the decisions of the courts of that state in exposition of that statute. But there is in truth, no such conflict as is supposed. The point settled by the supreme court in Swift v. Tyson, is simply this, that a bona fide holder of an accepted bill of exchange, who receives it from his immediate indorser in payment of an antecedent debt, and who, in receiving the bill, surrenders the security for the old debt, (and in that case another party was bound for the debt,) is a purchaser of the bill for value, and is entitled to recover the amount thereof from the acceptor, to the exclusion of all equities against the drawer. This is admitted to be clear law by the Pennsylvania cases themselves, and I have certainly no disposition to controvert it. It is true, that in delivering his opinion in the case of Swift v. Tyson, Judge Story affirms the law to be, "that a bona fide holder, taking a negotiable note in payment of, or as security for, a pre-existing debt, is a holder for a valuable consideration, entitled to protection against all the equities between the antecedent parties," but the alternative branch of the proposition applied to a question dehors the record, and is clearly an obiter dictum. It was so regarded by Mr. Justice Catron, who, while he concurred in the conclusion of Judge Story, protested against committing himself to a point not made by the record. It is believed that no adjudged American case goes the length of deciding that the transfer of a negotiable instrument as collateral security merely, confers such a title on the holder as will bar the equities of the maker against the previous parties. None such are cited by Judge Story, and he refers to some modern English cases in support of this extension of the doctrine which, however, seem to rest rather on the usages of the bankers of London than on the general principles of commercial law. If the reasoning above presented is sound as to the binding character of the decisions of the courts of Pennsylvania on the principal point involved in this record, then there is absolutely an end of the question,

since it has been shown that those decisions are entirely uniform and consistent in denying that a transfer of commercial paper, not in payment of an antecedent debt, but merely as collateral security for it, constitutes the creditor a holder for value so as to exclude the equities between the antecedent parties; and I may add, that I the more cheerfully defer to the authority of those decisions, that I am persuaded they rest on grounds of the most solid reason. But even if they did not possess any such high claim to the respect of this court, and it were conceded that the question must be determined here by the general principles of commercial law, as expounded by the courts of England and the United States, other than Pennsylvania, it is not perceived that the concession would benefit the plaintiffs. Without entering here upon a tedious analysis of the numerous authorities cited in the argument of this cause, it is deemed sufficient to state, that the cases of De la Chaumette v. Bank of England, 17 E. C. L. 101, and Bell v. Lent, 24 Wend. 230, are precisely in point, to show that the law, as settled in Pennsylvania, is in perfect harmony with the principles of commercial law, as those principles are understood and expounded in the highest courts of England and New York. The authority of these cases is not impugned by any of the authorities cited by the counsel for the plaintiffs. The same doctrine is fully recognized in Clark v. Flint, 22 Pick. 243; Dickerson v. Tillinghast, 4 Paige, 221; Bay v. Coddington, 5 Johns. Ch. 56; Coddington v. Bay, 20 Johns. 643; Wardell v. Howell, 9 Wend. 170; and the very modern case of Stalker v. McDonald, 6 Hill, 93.

The only remaining authority which I propose to cite in support of the views taken of this case, is the decision of the court of appeals of Virginia, in the very case at bar. The action on this note was originally brought in the circuit superior court for Ohio county; and it affords me pleasure to add that, in pursuing my investigations of the questions of law arising on this record, I have derived much aid from the luminous and well-reasoned opinion of Judge Fry, in the state court. It is true, that the court of appeals reversed the decision of Judge Fry, and set aside the special verdict found by the jury; but the decision of the appellate court turned alone upon the supposed defect of the special verdict, in not finding whether the indorsement from the payee to Stevens, was for value. It is believed that the defect, if it be one, in the special verdict found in the state court, is remedied by the finding of the evidence, in the case at bar, from which, by an agreement between the parties, the court is authorized to deduce the conclusion of fact instead of the jury; a course which seems to be in conformity with the well-settled English practice. See the cases of Dixon v. Yates, 27 E. C. L. 137; Blanchard v. Bridges, 31 E. C. L. 94; Magrath v. Hardy,

33 E. C. L. 976; and Holderness v. Collinson, 14 E. C. L. 101. The court of appeals have not favored us with the reasons on which their judgment was based; but the conclusion is, I think, inevitable from the judgment itself, that the court was of opinion, that the fraud, having been established on the part of the payee, it was incumbent on the plaintiffs to show that Stevens paid value for the note; else the failure to show consideration, could not have been deemed a defect in the verdict.

My conclusion upon the whole case is, that the law arising upon this special verdict is for the defendant; and judgment is rendered accordingly.

[This judgment was affirmed by the supreme court, where it was carried on writ of error. 8 How. (49 U. S.) 470.]