Hoffman, J.
The first question is, What is the legal character and position of the Atlas Mutual Insurance Company ? Have we, at General Term, on this case, a right to treat it as a corporation? If so, what is its charter? where are we to look for it?
There is not a word of allegation in the pleadings, nor of suggestion in the testimony, of its being an incorporated Company. The complaint and answer do not speak of the Atlas Mutual Insurance Company, but of the Atlas Insurance Company. The former name appears nowhere in the Case, except in the promissory note given in evidence.
*577 If it was of importance to the plaintiffs, or to the defendant, that the fact of an incorporation should appear, it should have been pleaded, or proven; and if proven, perhaps an amendment might be required and allowed. But if no pleading was necessary—if it was simply matter of evidence, which either party might adduce, to sustain his case, we are left without proof; without anything to show the charter or any of its provisions.
As the case is now presented, how is the General Term to know what powers the alleged corporation possessed; what was the authority of its officers; to what provisions of any general statute it was subject?
It is said that the point, that this was not proven to be an incorporated Company, was not raised at the trial; that the action was tried upon the theory that it was one; that it may have been admitted, not only that this was an incorporation, but that its charter was that which is now proffered to us at General Term.
No doubt there are many cases in which a party who does not suggest an objection at the trial, which, if then suggested, could have been met, will be precluded from raising it in the Court above.
Thus, where, upon a bill of .exceptions, two questions were raised at the trial upon powers contained in a will, viz., that the executors had not a power of sale, and that it was badly executed if they had; another point, that the consideration in the deed given under the power was merely nominal, could not be taken on appeal. (Meakings v. Cromwell, 1 Seld., 136.)
So in The Farmers' Loan and Trust Company v. Curtis, (3 Seld., 466,) a deed was executed by one Redfield for himself and as attorney of Jacob Le Roy. The deed was a piece of the evidence in the cause. For the first time, it was objected on the appeal that there was no proof of Redfield being in fact the attorney of Le Roy. The Court would not allow the objection to be considered. It might have been obviated by evidence, if taken at the trial.
In Ingraham v. Baldwin, (12 Barb., 9,) the question as to the validity of a mortgage arising, a point was, that the mortgagor ought to have been shown to have been twenty-five years of age at its date. (2 R. S., 545, § 1.) The point was first raised on the argument of the appeal, and the Court refused to consider it. It could have been obviated at the trial,
*578 In Laimbeer v. The Corporation of New York, (4 Sandf. S. C. R., 109,) upon a question of the validity of an assessment, an objection was taken on the appeal that the law required that the lots should be described by street numbers. It was answered, that the objection had not been taken at the trial, when it might have been shown that there were no street numbers.'
See, also, Sharp v. Whipple, (1 Bosw. R., 557,) in which the general rule is stated.
Now, in these cases, there is not an entire want of proof of a particular fact. A presumption of the existence of the fact, as if it was legally proven, may be made from what does exist. The omission to object at the trial justifies this presumption. The fact of an actual consideration; the fact of a sufficient power of attorney; the fact of-the mortgagor being twenty-five years of age; and the fact of there being no street numbers, were reasonable and fair assumptions'from what was proven in each case. But how is it possible to say, that this Company was incorporated? How can we say, that such and such are the provisions of its charter ?
The theory of the trial may as certainly have been that of a partnership, or association, under this title, as of a corporation. There is no word in pleading, testimony, rulings, or charge, which is irreconcilable with this view.
1 shall, then, consider the case on the ground of this being a mutual association for the purpose of insuring, without any corporate privilege, and of whose internal regulations we are left almost wholly ignorant. We are informed that it had a President and Secretary, and a capital partly, at least, composed of premium notes given in advance.
1. The note was a subscription note to the capital of the Company, to be held as such. The defendants had given notes to the amount of $5,000, including the one in suit. The jury have found an agreement that premiums, even if paid by new notes, only, should be applied on the subscription notes for $5,000, and such notes be retired for the amount so paid. . They find, also, that the amount of premiums paid under this agreement was $1,390.
It is not shown where the other notes, part of the $5,000 subscription notes, were, at the time of the trial. It was not shown *579 that they were not outstanding. There is nothing to indicate, upon the facts or the law, that the plaintiff or the Company itself has not as full a right to have the premiums appropriated to some of the other notes, as the defendants have to insist upon their application to the note in suit. I think this point must be disposed of in favor of the plaintiff, on the verdict.
2. The next question is, whether the note was available in the hands of the Company, and was held by it on a sufficient consideration, so that the association, or one representing it, could have sued.
The instrument is a perfect negotiable note, importing a consideration on its face, given to a Company, or Association, not shown to be unauthorized to take it; and defendants have not shown that there was not a valid or adequate consideration for it. This they were bound fully to have proven against a holder before maturity. On the theory now proceeded upon, the point that the note was given to a corporation, and that a holder, must see to the title of that corporation, cannot arise. We have a Company, holding a-negotiable note, with every presumption that it had a right to take and a right to transfer, with the legal presumption of a consideration, and that presumption not overthrown.
3. The next question of importance is as to the title of the plaintiff to sustain this action. The Judge was requested to charge that the plaintiff had not shown a legal title to the note, or right to sue thereon. This he refused to do, and an exception was taken.
We have, in the view now taken, the case of an association or partnership, with a President and Secretary, of a promissory note given to the association, in its assumed joint style or name, and indorsed over to the plaintiff by the signature of its President, with delivery.
The general right of one partner to accept or indorse cannot be disputed. (Collyer on Part., 401; Chitty on Bills, 42; see Davison v. Robertson, 3 Dow P. C., 229; and the case of Fleming v. McWair, House of Lords, July 16th, 1812, there mentioned.)
Mr. Collyer says, (§ 1137,) “As between the Company, (speaking of a joint stock company,) it seems clear that a bill negotiated in the name of the Company by any one of the members will, in the hands of a bona fide indorsee for value, be available against *580 the whole body of proprietors, provided there is nothing on the face of the bill to show that it was drawn or accepted in an unauthorized manner.”
There is a separate class of cases in which, members have been sought to be charged personally through the acceptance of one named as an officer or director. (Bramah v. Roberts, 1 Bingh. N. Cases, 469; Dickinson v. Valpy, 10 Barn. & Cres., 128.) Authority expressly given must generally be shown. But I apprehend that when a note is indorsed over for value, when the money goes to the use of the association, when the President indorsing has the note in possession and delivers it, a presumption of membership and power is sufficiently raised.
4. The next question we shall consider is of considerable moment. The Judge was requested to charge that if the jury believed the plaintiff held the note as collateral security to a usurious loan, the plaintiff was not entitled to recover. A refusal so to charge was excepted to.
The answer set up the defense that the note was negotiated and transferred by the Company at a usurious rate of interestthat it was discounted and purchased by the plaintiff at or about the rate of eighteen per cent per annum, and was void for usury.
The proof tends to establish loans, in general, by the plaintiff to the Company at usurious rates; and that the loan for which he took this note as collateral, was upon usurious interest.
I think that under the rule in Catlin v. Gunter, (1 Kern., 368,) the evidence of the usury, in the transaction between the plaintiff and the Company, was properly in the case, and could have been submitted to the-jury.
' But it is insisted that these defendants cannot set up as a defense to their note, which was good in its inception, usury in' a loan made to the payees of the note, for which it was transferred as security merely.
The old case of Bush v. Livingston decided that a lender of money upon usury, who took an assigiiment of a mortgage as security which was perfectly valid between the parties, was not barred from sustaining a bill of foreclosure. (2 Caine’s Cases in Error, 66.)
This doctrine was distinctly affirmed in Pearsall V. Kingsland. (3 Ed. Ch. R., 195.)
*581 But in these cases, being both in Chancery, the Court allowed only the recovery of the amount actually advanced by the lender, with legal interest.
In Wells v. Chapman, (4 Sandf. Ch. R., 312,) this point was much pressed. The Vice-Chancellor so far recognized it as to hold that the good mortgage was not so affected by usury and illegality in its transfer to the Life and Eire Insurance Company, as to prevent its being restored to full force, when the original pledgors discharged the debt, and took it back.
When the case was before the Supreme Court on appeal, (13 Barb., 562,) the Court recognized the rule of Bush v. Livingston and Pearsall v. Kingsland, to the fullest extent. (See also Warner v Gouverneur's Executors, 1 Barb., 39.)
There is also a class of cases in which it is held that if a security for money is originally free from usury, no subsequent agreement between the parties, by which usury is taken upon it, will render it void, and defeat an action. (Ferrall v. Shaen, 1 Saund., 295, and notes; Nichols v. Lee, 3 Anst., 940; ex parte, Jennings, 1 Mad. R., 331.)
Yet in Bell v. Lent, (24 Wend., 230,) the language of the Court is: “ There was no sale of the notes, which distinguishes the case from Cram v. Hendriclcs. The money was advanced by way of loan, upon usurious interest, and the notes were transferred simply as collateral securities. ' The collateral paper must abide the fate of the principal debt for which it was given; that being affected with usury, the whole is void as against these defendants.”
The notes were made by one Eaullmer, not a party to the suit. They were indorsed by Lent, by the firm of Eddy & Chubb, and by McIntyre. These parties were sued, except Chubb, who was dead. The notes were sent to Hew York to procure them to be discounted on account of Eddy & Chubb, and of McIntyre, and were so discounted at a usurious rate. Thus, as to Eddy and McIntyre at any rate, the usury was between the lender and the party sued upon the notes. Lent, however, was not affected by this consideration.
In Dean v. M. and F. Howell, (Lalor’s Supp. to Hill & Denio, 39,) the defendants made a note for $3,000, in favor of D. R. Minor, who indorsed it. Minor borrowed $2,000 on his own check, and gave the note as security, through a broker. The *582 note was a lent note, and the broker informed the lender of this. The Court says that the lender took the note, knowing it was void in its inception.
The case of Gaither v. The Farmers and Mechanics' Bank, (1 Peters’ U. S. R., 87,) must be admitted to be a direct authority to the point, that the lender on usury,- who has received a valid promissory noté as collateral to his loan, cannot sustain an action upon such note. The maker is not relieved from paying the note entirely. He is only relieved from paying it to that holder. The case was governed by the law of Maryland, and the statute of that State is not different from our own.
The case of Harrison v. Hannel, (5 Taunt., 780,) is referred to by the Supreme Court, and is strong upon the same point. • The good security may not be recovered upon by the usurious holder, because it is given for enforcing a usurious contract.
Dewitt v. Brisbane, (16 N. Y. R., 512,) applies the same principle, with great force, to' the case of a transfer of a good security upon a contract which was in violation of the restraining act. The party to the violation of the' law cannot acquire a legal or equitable right to enforce payment of the valid security, transferred upon the illegal transaction.
The line of cases referred to, such as The Mechanics' Bank v. Edwards, (1 Barb. R., 272,) is whére usury existed in the instrument proceeded upon, and particular persons were not allowed to set it up.
The authorities I have first cited were all in a court of equity, and may well be placed upon its peculiar doctrine as to usury. I consider the rule to be, that the usurer cannot sue at law jipon a valid note given to him as collateral merely, when he could not sustain an action against the principal for the debt.
From the statement of the learned Judge who tried the cause, after referring to his minutes, it appears that the case, as the parties have made it, presents the evidence as to usury far stronger, than he had noted it. In his view there was not enough to go to the jury upon the point. The case, as agreed upon, must control our action, and we think the evidence entitled the party to have the question submitted.
On this ground, I think, there must be a new trial.
*583 It cannot escape observation, that when the.'fact of incorporation is established on the new trial, some questions not now discussed will arise, especially the important one as to the operation of the statute of 1850, upon the question of usury.
Bosworth, Oh. J., and Moncrief, J., without considering the other questions discussed, concurred in granting a new trial on the ground that the transfer to the plaintiff was made to secure a usurious loan.
Judgment reversed and new trial granted, with costs to abide -the event.